UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FOUR S INVESTMENT GROUP, INC.,

                         Plaintiff,

               -v-

HILTON WORLDWIDE MANAGE LIMITED *and*
HAMPTON INNS INTERNATIONAL FRANCHISE, LLC,

                         Defendants.

26 Civ. 810 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

      This decision arises from an emergency application by a Panamanian hotel franchisee—plaintiff Four S Investment Group, Inc. ("Four S")—to prevent the termination of its franchise.

      On January 30, 2026, following a telephonic hearing, the Court granted Four S's motion for a temporary restraining order. Dkt. 8 ("TRO"). The TRO enjoined defendant Hilton Worldwide Manage Limited ("Hilton")[1] from terminating the franchise agreement between Four S and Hilton, pending a hearing, in 14 days, on Four S's application for a preliminary injunction.

      Now pending is Hilton's motion to dissolve the TRO for lack of subject matter jurisdiction. It argues that complete diversity does not exist between the parties. For the following reasons, the Court holds that it lacks subject matter jurisdiction. It thus dissolves the TRO, and dismisses this case, without prejudice to Four S's right to file suit in a court of competent jurisdiction.

---

[1] Four S later amended the complaint to add defendant Hampton Inns International Franchise, LLC. *See* Dkt. 12 ("AC").

I.      Background[2]

    A.      The Parties

Four S is a corporation formed under the laws of Panama. Dkt. 12 ("AC") ¶ 7.[3] In 2014, it constructed a hotel located in Panama City, Panama (the "hotel"), which it now operates. *Id.* ¶¶ 7, 20–21, 41.

Hilton is a limited partnership formed under the laws of the United Kingdom. *Id.* ¶ 8.[4] It manages and franchises hotels globally. *Id.* ¶¶ 3, 8–9.

Hampton Inns International Franchise, LLC ("Hampton Inns") is a limited liability company organized in Delaware. *Id.* ¶ 10. It is a wholly owned subsidiary of Hilton Worldwide Holdings, Inc., a Delaware corporation. *Id.*

    B.      The Franchise Agreement

In December 2012, Four S and Hampton Inns entered into a franchise agreement (the "agreement"). *Id.* ¶ 18; *see also* Dkt. 4-1 ("Franchise Agreement"). The agreement allowed the hotel to operate as a "Hampton by Hilton" property. AC ¶ 1. On January 1, 2018, Hampton Inns assigned and transferred all rights and duties under the agreement to Hilton. Dkt. 10-1 ("Acevedo Decl.") ¶ 7.

---

[2] The Court draws its account of the underlying facts of this case from the AC and the parties' submissions on the competing motions. These include: (1) Four S's motion for a TRO and preliminary injunction, and supporting memorandum of law, declaration, and exhibits, Dkts. 2–5; (2) Hilton's opposition, and supporting declarations and exhibits, Dkts. 15–20; and (3) Hilton's letter motion to dissolve the TRO and supporting declaration, Dkt. 10, Four S's response and supporting declaration, Dkt. 13, and Hilton's reply, Dkt. 14.

[3] The AC also alleges that Four S's principal place of business is in Illinois. AC ¶ 7.

[4] The AC alleges that Hilton's principal places of business are in Virginia and Tennessee. AC ¶ 9. Hilton disputes this allegation. *See* Dkt. 14 at 1.

Salient here, the agreement allowed Hilton to terminate it by providing (1) written notice to Four S and (2) an opportunity to cure the asserted defects. Franchise Agreement § 14.1. The cure period "shall not be less than 10 days" for failures to begin or complete scheduled construction or renovations, maintain insurance, or pay fees as required by the agreement. *Id.* The cure period "shall not be less than 30 days" for failure to comply with "any other provision" of the agreement or standards set by Hilton. *Id.* The agreement also allowed Hilton to terminate the agreement "immediately" upon, *inter alia*, "the same non-compliance within any consecutive 24-month period" "after curing any material breach" of the agreement or Hilton's standards. *Id.* § 14.2 (cleaned up).

### C.     Hilton's Asserted Termination of the Agreement

On September 4, 2025, Hilton issued Four S a written "notice of default and opportunity to cure." Dkt. 4-2 ("Default Notice"). The notice stated that the hotel had "failed its most recent Quality Assurance Evaluation on July 16, 2025." It declared Four S in default of the agreement based on the hotel's non-compliance with Hilton standards. It gave Four S until November 18, 2025—*i.e.*, 75 days—to cure the default. On that day, the notice stated, Hilton would audit the hotel and require it to receive at least an overall "Acceptable" score." Otherwise, it stated, Hilton, exercising its contractual right to terminate, would remove the hotel "from the Hampton by Hilton brand without any further notice or opportunity to cure." *Id.*

On January 16, 2026, Hilton issued a "notice of termination" to Four S. Dkt. 4-4 ("Termination Notice"). It stated that the hotel had failed the November 18, 2025 audit. *Id.* at 1. It stated that the termination would be effective at 12:01 a.m. on January 31, 2026. It further stated that, "[i]mmediately" thereafter, Four S would be required, *inter alia*, to cease holding

itself out as a Hampton by Hilton property, and to pay royalties, fees, and liquidated damages due under the agreement. *Id.* at 1–2.

### D.    Procedural History

At 8:35 a.m. on January 30, 2026, Four S filed the original complaint and an emergency motion for a TRO. Dkts. 1–5. The motion stated, *inter alia*, that Hilton had discontinued access to the hotel's Hilton reservation system the previous day, despite the termination notice's having stated that termination would first become effective at 12:01 a.m. on January 31, 2026. Dkt. 3 at 13. Four S argued that, notwithstanding Hilton's right to terminate the agreement, Hilton had frustrated Four S's efforts to cure the asserted deficiencies.

The same day (January 30, 2026), the Court held a telephonic hearing. *See* Dkt. 7. Both sides appeared and presented argument. For the reasons stated on the record at the hearing, the Court found that Four S had made a strong showing of irreparable harm, that the balance of equities decidedly favored Four S, and that Four S had raised serious questions going to the merits. It thus granted the motion. Jan. 30, 2026 Hr'g Tr. at 29–35; *see also* TRO at 1. The Court set a briefing schedule for Four S's motion for a preliminary injunction, and scheduled a hearing February 13, 2026, the day the TRO was scheduled to expire. TRO at 1.

On February 2, 2026, Hilton moved to dissolve the TRO. It argued, for the first time, that diversity between the parties was absent. Dkt. 10. On February 4, Four S responded. Dkt. 13.

4

The same day, Four S filed the AC, adding Hampton Inns as a defendant.  Dkt. 12.[5]  On February 5, Hilton replied.  Dkt. 14.[6]

## II.     Governing Legal Standards

"Subject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power."  *Windward Bora LLC v. Browne*, 110 F.4th 120, 125 (2d Cir. 2024) (citation omitted) (cleaned up).  In this case, the only basis for subject matter jurisdiction that Four S has asserted is diversity jurisdiction under 28 U.S.C. § 1332.  Such requires (1) that the amount in controversy exceed $75,000 and (2) "complete diversity between all plaintiffs and defendants."  *Pampillonia v. RJR Nabisco Inc.*, 138 F.3d 459, 460 (2d Cir. 1998).

"The burden of persuasion for establishing diversity jurisdiction [is] on the party asserting it."  *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).  "That party must allege a proper basis for jurisdiction in [its] pleadings and must support those allegations with competent proof if a party opposing jurisdiction properly challenges those allegations."  *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) (citation omitted); *see also Hertz Corp.*, 559 U.S. at 96–97 ("When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof.").

Where, as here, "subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings."  *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) (citing Fed. R. Civ. P. 12(b)(1); *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)); *see also APWU v.*

---

[5] Four S filed the AC within 21 days after serving the original complaint.  *See* Fed. R. Civ. P. 14(a)(1)(A).

[6] Hilton opposed Four S's motion for a preliminary injunction.  Dkts. 16–20.  Because the Court dismisses the case for lack of subject matter jurisdiction, the Court denies the motion for a preliminary injunction as moot.

*Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." (citation omitted)).

## III.   Discussion

The AC invokes diversity jurisdiction under § 1332(a). AC ¶ 11.[7] As to the plaintiff, it alleges that Four S is a citizen of Panama and Illinois. *Id.* ¶ 13. As to the defendants, it alleges that Hilton is a citizen of the United Kingdom and Virginia, *id.* ¶ 14,[8] and that Hampton Inns is a citizen of Delaware, *id.* ¶ 15.[9] For the purpose of assessing diversity, the Court credits these allegations as to citizenship, which—save one legally irrelevant exception—are undisputed.[10]

Under settled law, however, these allegations do not plead diversity.

Diversity is present where the action is between "citizens of a [U.S.] State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). It is also present if the action is between "citizens of different [U.S.] States and in which citizens or subjects of a foreign state are

---

[7] The amount-in-controversy requirement is, undisputedly, satisfied. *See, e.g.*, AC ¶¶ 2–3, 65–67.

[8] The AC alleged that Hilton had principal places of business in both Virginia and Tennessee, and thus was a citizen of each, *id.* ¶¶ 7, 14, but Four S, in its briefing, has abandoned that claim as to Tennessee.

[9] The AC alleges, and Hilton does not dispute, that Hampton Inns is a "wholly owned subsidiary of Hilton Worldwide Holdings, Inc.," a Delaware corporation. AC ¶ 10. Because a limited liability company "takes the citizenship of each of its members," *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012), Hampton Inns is a Delaware citizen. *See also* AC ¶ 15 (alleging same).

[10] While acknowledging that it is a citizen of the United Kingdom because it is organized there, Hilton disputes that it also has a principal place of business in, and thus is also a citizen of, Virginia. Dkt. 14 at 1. For the reasons that follow, the Court's determination that diversity is lacking here is unaffected by whether Hilton (in addition to being a U.K. citizen) is also a citizen of Virginia.

additional parties." *Id.* § 1332(a)(3). It is well-settled, however, that diversity is "lacking within the meaning of these sections where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." *Univ. Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002) ("*Universal Licensing*") (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 381 (1959) (dictum); *Dassigienis v. Cosmos Carriers & Trading Corp.*, 442 F.2d 1016, 1017 (2d Cir. 1971) (*per curiam*)). And where "a corporation organized under the laws of a foreign nation maintains its principal place of business in a [U.S.] State, and is considered a citizen of that State, diversity is nonetheless defeated if another alien party is present on the other side of the litigation." *Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir. 2000) ("*Creaciones*") (citation omitted).

Decisively here, there is an alien party on each side of this litigation. Plaintiff Four S is organized under the laws of Panama, AC ¶ 7, and defendant Hilton is organized under the laws of the United Kingdom, *id.* ¶ 8. These two parties are thus, undisputedly, aliens. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) (citing 28 U.S.C. § 1332(c)(1)). And although there is an additional defendant (Hampton Inn) who is a non-alien, there is no non-alien plaintiff. In these circumstances, the diversity requirement is not met. "[D]iversity is lacking within the meaning of [§ 1332] where . . . on one side there are citizens and aliens and on the opposite side there are only aliens." *Universal Licensing*, 293 F.3d at 581; *see also Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 788–90 (2d Cir. 1980) ("*Corporacion Venezolana*") (diversity jurisdiction lacking where one side had foreign citizens, and other side had foreign and domestic citizens); *F5 Cap. v. Pappas*, 856 F.3d 61, 75 (2d Cir. 2017) (same).

Four S resists this outcome on the grounds that the alien parties, although organized abroad, each have a domestic principal place of business (for it, Illinois; for Hilton, as alleged, Virginia) and thus qualify as citizens. Dkt. 13 at 2. But the fact that the corporate aliens on each side of a case double as U.S. citizens does not alter the diversity analysis. It is hornbook law that, "[f]or purposes of diversity jurisdiction, a corporation is deemed [] to be a citizen *both* of the state in which it has its principal place of business *and* of any state in which it is incorporated." *Carter*, 822 F.3d at 60 (citing 28 U.S.C. § 1332(c)(1)) (emphases added). In *Corporacion Venezolana*, the Second Circuit "concluded beyond cavil that . . . a corporation organized under the laws of a foreign nation remains an *alien* corporation under § 1332, even if its principal place of business is in one of the States." *Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 392 (2d Cir. 1989) (citing 629 F.2d at 790) (emphasis in original). Thus, even where "a corporation organized under the laws of a foreign nation maintains its principal place of business in a [U.S.] State, and is [also] considered a citizen of that [U.S.] State, diversity is nonetheless defeated if another alien party is present on the other side of the litigation." *Creaciones*, 232 F.3d at 82. The Court lacks subject matter jurisdiction because the parties are not diverse. *See, e.g.*, *Corporacion Venezolana*, 629 F.2d at 790 ("even assuming [] dual citizenship, the fact that alien parties were present on both sides would destroy complete diversity").

"Because federal courts are courts of limited jurisdiction, if a 'court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.'" *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 299 (2d Cir. 2021) (quoting Fed. R. Civ. P. 12(h)(3)). The Court therefore dismisses this case, without prejudice to Four S's right to refile in a court of competent jurisdiction. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 116

(2d Cir. 2017) ("a complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction"). In light of the dismissal, the Court must, and does, dissolve the TRO, effective immediately.

## CONCLUSION

For the above reasons, the Court dismisses this case for lack of subject matter jurisdiction, and dissolves the TRO, effective immediately. The dismissal is without prejudice to Four S's ability to file a new action in a court of competent jurisdiction.[11]

The Clerk of Court is respectfully directed to terminate all pending motions and to close this case.

SO ORDERED.

                                                                               *Paul A. Engelmayer*
                                                   PAUL A. ENGELMAYER
                                                   United States District Judge

Dated: February 12, 2026
       New York, New York

---

[11] The Court has been notified by counsel that Four S, anticipating the possibility that the Court would dismiss this case for want of subject matter jurisdiction, has filed suit in state court seeking substantially the same relief.